UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Gary Gerard Topolewski,<br><br>　　　　　　　Defendant. | Case No. 2:24-cr-00150-GMN-NJK<br><br>**Order**<br><br>(Docket No. 59) |

Pending before the Court is Defendant Gary Topolewski's motion for temporary release, filed on an emergency basis. Docket No. 59. The Government filed a response in opposition. Docket No. 61. Defendant filed a reply. Docket No. 62. For the reasons discussed below, the Court **DENIES** Defendant's motion for temporary release.

**I.    BACKGROUND**

On June 25, 2024, a criminal complaint issued against Defendant for bank fraud. Docket No. 1. Defendant was arrested in the Eastern District of Washington and, on June 28, 2024, Defendant was ordered detained by United States Magistrate Judge James A. Goeke. *See* Docket No. 7-3 (minutes of detention hearing); *see also* Docket No. 7-1 (written order). On July 9, 2024, a federal grand jury sitting in Las Vegas, Nevada issued an indictment charging Defendant with three counts of bank fraud, in violation of Title 18, United States Code, Sections 1344(1) & (2), and 2(b), as well as a forfeiture allegation. Docket No. 8. On February 4, 2025, the grand jury issued a superseding indictment charging Defendant with: (1) nine counts of bank fraud in violation of Title 18, United States Code, Sections 1344(1) & (2), and 2(b); (2) five counts of concealment of money laundering in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); (3) six counts of money laundering in violation of Title 18, United States Code, Section 1957; and (4) one count of aggravated identity theft in violation of Title 18, United States Code, Section 1028A(a)(1), along with (5) two forfeiture allegations. Docket No. 39.

On July 15, 2024, Defendant made his initial appearance in this District. Docket No. 10. On July 18, 2024, Defendant filed a motion for district judge review of the detention order. Docket No. 14. On August 20, 2024, United States District Judge Gloria M. Navarro affirmed the detention order. Docket No. 29. In reaching that determination, Judge Navarro found that the nature and circumstances of the offense charged strongly weigh in favor of detention because the risk of flight was heightened given the very lengthy maximum prison terms (up to 30 years on each count) and the fact that the offense involves the use of false identifications and aliases. *Id.* at 3-4. Judge Navarro found further that, although the least important factor, the weight of the evidence militated in favor of detention given the "strong" evidence presented by the Government. *Id.* at 4. Judge Navarro also found that Defendant's history and characteristics favor detention. *Id.* at 4-6. Judge Navarro recognized that Defendant resided in either California or Nevada for 40 years and that he has no prior criminal history, but Judge Navarro found those considerations were outbalanced by Defendant's "readily available resources to flee." *Id.* at 4-5. In particular, Judge Navarro explained that Defendant has the necessary financial resources to fund flight, access to fraudulent documents including falsified driver's licenses, and family in Canada who could assist flight. *Id.* at 6. Judge Navarro lastly determined that home incarceration and location monitoring would not reasonably assure Defendant's presence or mitigate any risk of flight given his history of disobeying judicial orders in a civil matter, untruthfulness to law enforcement, and means to flee. *Id.* at 6-8. In conclusion, Judge Navarro determined that the governing factors "*heavily* weigh in favor of detention." *Id.* at 8 (emphasis added).

On January 28, 2025, Defendant filed a motion to reopen his detention hearing. Docket No. 36. Defendant's motion was focused on his fiancée's cancer diagnosis and related treatment plan. *See id.* at 4. The Court denied that motion, agreeing with the Government that the circumstances described appeared to create a higher risk of flight, not a lesser risk. Docket No. 47 at 4-5. The Court also explained that the materiality of new information must be analyzed within the context of the entire detention picture, which militated strongly against release given that Judge Navarro had already recognized a serious risk of flight given, *inter alia*, the very lengthy maximum prison terms that Defendant faces, the fact that the offenses involve the use of false identifications

and aliases, the "strong evidence" against Defendant, his financial resources to flee, Defendant's access to fraudulent documents including falsified driver's licenses, Defendant's family in Canada who could assist flight, Defendant's untruthfulness with law enforcement, and Defendant's history of violating judicial orders. *Id.* (citing Docket No. 29 at 3-8). Those circumstances weighed "heavily" in favor of detention previously, and either persisted or actually weighed even more so in favor of detention at the time of that request to reopen detention. *See id.* at 5 & n.5. As such, the Court concluded that reopening detention was not warranted. *See id.* at 6.

On September 24, 2025, Defendant filed a motion for temporary release. Docket No. 59. In that motion, defense counsel proffers that Defendant's mother passed away on September 22, 2025, after having received palliative care. *Id.* at 2. Defense counsel proffers that Defendant was "extremely close" to his mother. *Id.* Defense counsel proffers further that the funeral is expected to take place during the week of September 29, 2025, in Canada. *Id.* The motion asks for an order allowing Defendant's release for "at least ten days but up to three weeks" to attend the anticipated funeral services and assist with matters related to his mother's passing. *Id.* The motion also recognizes that Defendant cannot be subject to location monitoring while in Canada, but that Defendant could provide Pretrial Services with an itinerary and provide daily phone or video contact. *Id.* Defense counsel proffers that the parties are finalizing a plea agreement that contemplates "additional years in custody." *Id.* at 4. The motion argues that these circumstances show that Defendant "has no incentive to flee" and is not a risk of flight. *Id.*

On September 25, 2025, the Government filed its response in opposition. Docket No. 61. As a threshold matter, the Government represents that Pretrial Services opposes the instant request. *See id.* at 2 n.2. The Government also opposes the request for several reasons. The Government reiterates that Defendant has already been found on three separate occasions by three separate judges to pose a serious risk of flight. *See id.* at 2 & n.1 (citing Docket No. 20-1 (initial detention hearing), Docket No. 29 (denial of motion for district judge review of the detention order), Docket No. 47 (denial of motion to reopen detention hearing)). The Government contends that the circumstances of Defendant's flight risk are "as strong as ever" at this juncture given that Defendant is facing years of imprisonment whether he enters a plea agreement or is found guilty

3

at his upcoming trial. *See* Docket No. 61 at 6; *see also id.* at 7-8. The Government also reiterates that Defendant cannot be meaningfully monitored while he is in Canada and, further, that extradition from Canada could prove to be difficult, lengthy, and ultimately uncertain. *See id.* at 6-7.[1] In sum, the Government offers condolences to Defendant for his loss, but the Government argues that "there is truly no way to assure he would return to the United States following a period of temporary release." *Id.* at 2.

On September 26, 2025, Defendant filed a reply. Docket No. 62. The reply attaches a death certificate. Docket No. 62-1. The reply argues that Defendant is not a flight risk given his amount of time in detention, the plea negotiations that may reduce his ceiling of custodial exposure, and his appreciation of the consequences of disobeying any release order. *See* Docket No. 62 at 2. Defense counsel proffers that Defendant's sister has agreed to act as a third-party custodian, such that appropriate release conditions can be fashioned. *Id.* at 2-3. Defense counsel also proffers that a mass and funeral are planned for October 1 and October 2, 2025. *See id.* at 1.

Trial is set for December 15, 2025. Docket No. 56.

## II.    STANDARDS

A defendant detained pending trial may be released on a temporary basis if "necessary for the preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).[2] Courts grant relief under Section 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Boatwright*, 612 F. Supp. 3d 1169, 1175 (D. Nev. 2020) (quoting *United States v. Hamilton*, Case No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)). Courts determine whether compelling reasons exist within the context of the circumstances of the defendant's risk

---

[1] The Government raises other concerns. In light of the ruling herein, the Court need not reach the other arguments raised by the Government.

[2] The introduction to Defendant's motion relies on 18 U.S.C. §§ 3142(c)(3) and 3145(a)(2), but the body of the motion relies on 18 U.S.C. § 3142(i). *See* Docket No. 59 at 1, 3. The Government argues that the case is properly analyzed pursuant to Section 3142(i). *See* Docket No. 61 at 4 n.4. Defendant's reply does not address this issue. The Court analyzes the request pursuant to Section 3142(i).

4

of flight and danger to the community. *See, e.g.*, *United States v. Navarro*, Case No. 2:19-cr-0056-JCM-DJA, 2020 WL 5877816, at *2 (D. Nev. Oct. 2, 2020). In other words,

> the decision whether to release a defendant temporarily under § 3142(i) is . . . intertwined with the factors that the initial judicial officer considered at the defendant's detention hearing, because the risk of nonappearance and danger to the community are front and center in the judicial officer's mind as he or she decides how compelling the defendant's reason for temporary release is. These factors never go away.

*United States v. Alderete*, 336 F.R.D. 240, 269 (D.N.M. 2020). The Court is, at bottom, considering "whether a defendant has presented such compelling reasons for temporary release that they effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order." *United States v. Clark*, 448 F. Supp. 3d 1152, 1157 (D. Kan. 2020). The defendant "bears the burden of establishing circumstances warranting temporary release." *Boatwright*, 612 F. Supp. 3d at 1175.

### III.  ANALYSIS

It is not unusual for important family events to transpire while a defendant is detained awaiting trial, including funerals of close family members and other loved ones. The Court sympathizes with Defendant for his loss. The Court also appreciates the desire to attend funeral services and to spend time with family. While cognizant of the challenging personal circumstances, however, courts routinely conclude that a loved one's funeral does not constitute a compelling reason for temporary release even in the context of local or domestic travel. *See, e.g.*, *United States v. Clemons*, Case No. 1:23-cr-00662-16, 2025 WL 2599481, at *1-2 (N.D. Ohio Sept. 9, 2025); *United States v. Spargo*, Case No. 3:25-cr-05043-DGE, 2025 WL 1582128, at *1 (W.D. Wash. June 4, 2025); *United States v. Williams*, Case No. 6:24-cr-199-WWB-RMN, 2025 WL 562646, at *1 (M.D. Fla. Feb. 20, 2025); *United States v. Pineda*, Case No. 1:19-cr-00195-NODJ-BAM-1, 2025 WL 268954, at *1-2 (E.D. Cal. Jan. 21, 2025); *United States v. Lopez*, Case No. 1:22-cr-00159-JLT-SKO-1, 2024 WL 3304188, at *2 (E.D. Cal. July 3, 2024); *United States v. Sibley*, Case No. 23-cr-00486-DDD, 2024 WL 2923912, at *3 (D. Colo. June 10, 2024); *United States v. Burket*, Case No. 1:23-cr-00420-DDD, 2024 WL 152513, at *3 (D. Colo. Jan. 15, 2024); *United States v. Esquibel*, Case No. 1:15-cr-02731-JCH, 2023 WL 6481140, at *1-2 (D.N.M. Oct.

5, 2023); *United States v. Toledo Pardo*, Case No. 2:22-cr-00151-LK, 2023 WL 4641055, at *1-2 (W.D. Wash. July 20, 2023); *United States v. Castaneda*, Case No. 1:21-cr-00304-ADA-BAM, 2023 WL 3619476, at *1 (E.D. Cal. May 24, 2023); *United States v. Schley*, Case No. CR19-0247-JCC, 2023 WL 2890384, at *1 (W.D. Wash. Apr. 11, 2023); *United States v. Rowelette*, Case No. CR17-0070-JCC-1, 2022 WL 2531815, at *1 (W.D. Wash. July 7, 2022); *United States v. Wood*, Criminal Case No. 21-385-23, 2022 WL 1689511, at *1-2 (W.D. Penn. May 26, 2022); *United States v. Butler*, Case No. 21-20027-JAR-01, 2022 WL 1538696, at *2-3 (D. Kan. May 16, 2022); *United States v. Merayo*, Case No. 1:21-cr-00740-MV, 2021 WL 6134683, at *1 (D.N.M. Dec. 29, 2021); *United States v. Aziz*, Case No. CR 21-118 JLR, 2021 WL 5494865, at *2 (W.D. Wash. Nov. 23, 2021), *aff'd* 2021 WL 5514432, at *1-2 (W.D. Wash. Nov. 24, 2021); *United States v. Jackson*, Case No. 15-40065-01-DDC, 2020 WL 7626539, at *1 (D. Kan. Dec. 22, 2020); *United States v. Banks*, Case No. 2:20-cr-00097-APG-DJA, 2020 WL 6505040, at *2-3 (D. Nev. Nov. 5, 2020); *Navarro*, 2020 WL 5877816, at *2; *United States v. Williams*, Case No. 2:20-cr-00081, 2020 WL 4431565, at *2-3 (W.D. Penn. July 31, 2020); *United States v. Carter*, Case No. 0:20-cr-0035-MJD-KMM, 2020 WL 2112280, at *1-2 (D. Minn. May 4, 2020); *United States v. Spinks*, Case No. 1:18-cr-00084-JAW-1, 2019 WL 2238359, at *2-3 (D. Me. May 23, 2019).[3] As surmised by United States District Judge Daniel D. Crabtree in a case relied upon in Defendant's own motion:

> All things being equal, the court would prefer for Mr. Jackson to attend his grandfather's funeral. Grieving as a family undoubtedly has virtues and the court wishes Mr. Jackson could experience those benefits. But all things aren't always equal, and they're not equal here.

*Jackson*, 2020 WL 7626539, at *1 (denying motion for temporary release).

Defendant has not met his burden of establishing a compelling reason for temporary release. The circumstances on which Defendant has previously been found to be a flight risk persist. To repeat, those circumstances weighed "heavily" in favor of detention. Docket No. 29 at 8. It would appear that, if anything, the danger of flight is heightened now that Defendant faces

---

[3] On the other side of the ledger, neither Defendant's motion nor Defendant's reply cites to any judicial opinion granting a motion for temporary release to attend a funeral.

6

either an upcoming trial or a decision to accept a plea agreement encompassing years of additional incarceration. *See* Docket No. 59 at 3. Transitioning from a prospect of long-term incarceration to a more crystalized appreciation of that reality would increase the risk of flight. The location to which Defendant seeks to travel is also highly problematic. This is not a request to be released for a few hours close to the place of detention under law enforcement supervision, but rather a request for a lengthy trip out of the country with no GPS monitoring subject to only remote check-ins with Pretrial Services and potential supervision by a third-party custodian.[4] Making matters even worse, Defendant is a Canadian citizen and seeks to travel to the precise country that has been referenced throughout the pendency of this case as a likely flight target if Defendant were to try to flee. *See, e.g.*, Docket No. 47 at 4-5 (discussing some of Defendant's Canada-specific circumstances). The Court agrees with the Government that "[t]he fact that this [request if granted] would involve an international trip to a country where Defendant is a citizen and has other significant ties should further weigh against granting the request." Docket No. 61 at 7. The Court is unpersuaded by Defendant's bald contentions that he is not a flight risk given that the circumstances plainly continue to show that he is one, particularly with respect to Canada. The Court also does not find that conditions can be fashioned to ensure Defendant's return to custody from the proposed international trip.

Considering the law and all of the pertinent factual circumstance, Defendant did not satisfy his burden of establishing compelling reasons for his temporary release to attend his mother's funeral in Canada.[5]

---

[4] The Government specifically warned that the Court may have no authority over a third-party monitor, if one were proposed. Docket No. 61 at 7. The reply does not explain whether the proposed third-party custodian lives in the United States or is otherwise subject to this Court's authority. *See* Docket No. 62 at 3. Regardless, however, the Court would not grant temporary release even if the third-party custodian were subject to the Court's authority.

[5] The United States Marshals Service confirmed that the detention facility can accommodate Defendant watching the funeral by remote means. *See* Docket No. 61 at 8-9. The reply states cryptically that "*[c]urrently*, the family is *not paying* for a videographer to record and/or stream the event." Docket No. 62 at 1 (emphasis added). From this predicate, the reply states that "[a]ttending via Zoom is not an option." *Id.* The apparent availability of funds to pay for Defendant's travel to Canada, as well as for his daily needs while there, would suggest that funds exist such that video could be arranged if a desire exists for that service. Whether Defendant

7

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion for temporary release.

IT IS SO ORDERED.

DATED: September 26, 2025

_____
Nancy J. Koppe
United States Magistrate Judge

---

can participate remotely or not, however, he has not met his burden of establishing compelling reasons for his temporary release.