SIGAL CHATTAH
Acting United States Attorney
District of Nevada
Nevada Bar Number 8264
RICHARD ANTHONY LOPEZ
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Tel: 702-388-6336; Fax: 702-388-6418
tony.lopez@usdoj.gov

LORINDA I. LARYEA
Acting Chief, Fraud Section
SARA HALLMARK
Trial Attorney
Department of Justice
Fraud Section
1400 New York Avenue, NW
Washington, D.C. 20005
sara.hallmark2@usdoj.gov

*Attorneys for the United States*



✔ FILED _____ RECEIVED
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

DEC 15 2025

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GARY GERARD TOPOLEWSKI,<br><br>Defendant. | No. 2:24-CR-150<br><br>**Plea Agreement for Defendant Gary Gerard Topolewski Pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (B)** |

This plea agreement between Gary Gerard Topolewski ("defendant"), the Department of Justice Criminal Division Fraud Section ("Fraud") and the United States Attorney's Office for the District of Nevada (the "USAO") (collectively, the "Government") sets forth the parties' agreement regarding the criminal charges referenced herein and the applicable sentences, fines, restitution, and forfeiture in the above-captioned case. This agreement binds only defendant and

the Government and does not bind the district court, the U.S. Probation Office, or any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities. This agreement does not prohibit the Government or any agency or third party from seeking any other civil or administrative remedies, including administrative forfeiture or civil forfeiture *in rem* actions, directly or indirectly against defendant or defendant's property.

This agreement becomes effective upon signature by defendant, defendant's counsel, and an Assistant United States Attorney.

## I. DEFENDANT'S OBLIGATIONS

1. Defendant agrees to:

a. At the earliest opportunity requested by the Government and provided by the district court, appear and plead guilty to Count Six of the superseding indictment in this case, which charges defendant with bank fraud in violation of 18 U.S.C. § 1344(1);

b. Stipulate to the facts agreed to in this agreement;

c. Abide by all agreements regarding sentencing contained in this agreement;

d. Not seek to withdraw defendant's guilty plea once it is entered;

e. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter;

f. Not commit any federal, state, or local crime;

g. Be truthful at all times with the U.S. Probation and Pretrial Services Offices and the Court;

h. Before and after sentencing, upon request by the Court, the Government, or the Probation Office, provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning defendant's assets and defendant's ability to pay. As part of the required disclosure, defendant agrees to provide any and all

2

financial information and authorizations requested by the Probation Office for preparation of the Presentence Report. Defendant further agrees that, upon filing of this agreement, the Government is authorized to obtain defendant's credit report. Defendant will also complete a financial form provided by the Government, to include all supporting documentation, and return it to the Government within ten (10) days from entry of the plea. Defendant agrees that the district court may enter any order necessary to effectuate or facilitate disclosure of defendant's financial information.

i. Defendant agrees that restitution shall be ordered due and payable in full immediately after the judgment is entered, and that the full amount of any restitution ordered is subject to immediate enforcement and collection by the Government or defendant's victims, or both. Defendant agrees that any schedule of payments entered by the district court is a schedule of the minimum payment due and does not prohibit or limit the methods by which the Government may immediately enforce and collect the judgment in full. Defendant acknowledges that restitution may not be discharged, in whole or in part, in any present or future bankruptcy proceeding.

j. To facilitate payment of any fine, restitution, or assessment, surrender assets defendant obtained directly or indirectly as a result of defendant's crimes. Defendant agrees to voluntarily release funds and property under defendant's control or in which defendant has any property interest, before and after sentencing, to pay any fine or restitution identified in this agreement, agreed to by the parties, or ordered by the Court.

k. The forfeiture of the property, the imposition of the forfeiture on the property, and the imposition of the in personam criminal forfeiture money judgment as set forth in this plea agreement, Forfeiture Allegation One of the Superseding Criminal Indictment, and Forfeiture Allegation One of the Bill of Particulars.

3

## II. THE GOVERNMENT'S OBLIGATIONS

2.      The Government agrees to:

  a.      Stipulate to facts agreed to in this agreement;

  b.      Abide by all agreements regarding sentencing contained in this agreement;

  c.      At sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable sentencing guidelines offense level, pursuant to USSG § 3E1.1, and move for an additional one-level reduction if available under that section;

  d.      At sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that the district court may consider any dismissed charges in determining the applicable sentencing guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed; and

  e.      Not bring any additional charges against defendant arising out of the factual basis set forth in this agreement. However, the Government reserves the right to prosecute defendant for (a) any crime of violence as defined by 18 U.S.C. § 16; and (b) any criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371). Defendant agrees that the district court at sentencing may consider any uncharged conduct in determining the applicable sentencing guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

## III. ELEMENTS OF THE OFFENSE

G.T. ~~six~~ ST

3.      Count One: The elements of bank fraud under 18 U.S.C. § 1344(1) are as follows:

Element 1: the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution of something of value;

Element 2: that the statements made [or facts omitted] as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Element 3: the defendant did so with the intent to defraud the financial institution; and

Element 4: the financial institution was insured by the Federal Deposit Insurance Corporation.

*See* Ninth Circuit Model Criminal Jury Instruction 15.36 (2022 ed.) (last updated Nov. 2024)

## IV. CONSEQUENCES OF CONVICTION

4.    Maximum Statutory Penalties: Defendant understands that the statutory maximum sentence the district court can impose for a violation of 18 U.S.C. § 1344(1) as charged in Count 6, is: 30 years imprisonment; a 3-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.    Criminal Forfeiture: Defendant understands that the district court will impose the forfeiture of the property and the in personam criminal forfeiture money judgment.

7.    Parole Abolished: Defendant acknowledges that defendant's prison sentence cannot be shortened by early release on parole because parole has been abolished.

8.    Supervised Release: Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

5

9.      Factors under 18 U.S.C. § 3553: Defendant understands that the district court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining defendant's sentence. However, the statutory maximum sentence limits the district court's discretion in determining defendant's sentence.

10.      Potential Collateral Consequences of Conviction: Defendant understands that, by pleading guilty, defendant may be giving up valuable Government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the district court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

11.      Potential Removal/Deportation Consequences of Conviction: Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The district court cannot advise defendant fully regarding the immigration consequences of the felony conviction in this case, but defendant's attorney has advised him about the deportation risks of his guilty plea. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

## V. FACTUAL BASIS

12.    Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant acknowledges that if defendant elected to go to trial instead of pleading guilty, the Government could prove defendant's guilt beyond a reasonable doubt and establish its right to forfeit the specified property by preponderance of the evidence. Defendant further acknowledges that defendant's admissions and declarations of fact set forth below satisfy every element of the charged offense. Defendant waives any potential future claim that the facts defendant admitted below are insufficient to satisfy the elements of the charged offense. Defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

a. Between approximately March 2014 and May 2024, Defendant Gary Gerard Topolewski submitted and caused to be submitted false and fraudulent commercial loan applications and supporting materials to financial institutions and other lenders on behalf of multiple companies with which he was associated. Topolewski, among other things, falsely represented in loan applications that the loan proceeds were for the purchase of large, industrial earth-moving construction equipment and for business working capital purposes. In reality, Topolewski and the companies did not use the proceeds as falsely represented and instead diverted and misappropriated proceeds for other purposes. As a result, Topolewski fraudulently obtained on behalf of the companies approximately $39 million in commercial loan proceeds from financial institutions and lenders and unsuccessfully sought millions more.

b. Topolewski America Inc. ("Topolewski America") was a corporation registered in the State of Nevada since approximately 1993, and utilized the website

7

"www.topcor.us." Topolewski was the original registered agent of Topolewski America and was listed in filings with the Nevada Secretary of State as a previous President, Director, Secretary, and Treasurer of the company, until at least 2016. Topolewski America purported to be a civil and mining contractor that used a business address in Las Vegas, Nevada.

c. Morrison-Knudsen Services Inc. ("Morrison Knudsen") was a corporation registered in the State of Nevada since approximately 2008, and utilized the website "morrison-knudsen.com." Topolewski was listed in submissions to the Nevada Secretary of State as having held multiple positions with the company, including President, Secretary, and Director.

d. Finning International Inc. ("Finning Nevada") was a corporation registered in the State of Nevada since approximately 2008. Topolewski was listed as a previous President and Secretary of the company in submissions to the Nevada Secretary of State. During the relevant period, Finning Nevada used business addresses in Carson City and Henderson, Nevada. Finning Nevada was not affiliated with the multi-national Caterpillar distribution company "Finning International Inc.", which had its head office in Canada.

e. Finning Nevada was the company to which financial lenders and financial institutions sent loan funds upon approving the loans for Topolewksi America and Morrison Knudsen.

f. Metal Jeans Inc. ("Metal Jeans") was a corporation registered in the State of Nevada since approximately 1997, with the same listed business address as Topolewski America. Topolewski was listed in submissions to the Nevada Secretary of State as having held multiple positions with the company, including

8

President, Secretary, and Director.

g. Financial Institutions A, B, C, D, E, F, and G were financial institutions as defined in 18 U.S.C. § 20, and Lender 1 was a commercial lender.

h. The purpose of the scheme was for Topolewski to fraudulently obtain commercial loans on behalf of Topolewski America, Morrison Knudsen, and Metal Jeans from financial lenders, including the victim financial institutions listed above, through false and misleading statements and representations, all so that Topolewski could misappropriate funds, unlawfully enrich himself, and conceal his scheme.

i. As part of the scheme, Topolewski applied for commercial loans on behalf of entities with which he was associated and for which he exercised control of their financial accounts, and, among other things, (a) provided, and caused to be provided, materially false, fraudulent, and misleading representations to lenders about the nature and purpose of the requested loans; (b) created, and caused to be created, materially false and fraudulent supporting materials, including falsified equipment invoices, financial reports, tax documents, and income statements, to fraudulently induce the financial institutions to extend loans to his companies; and (c) concealed from financial institutions material information.  Additionally, Topolewski utilized at least two aliases—"R.F." and "B.W."—as part of the scheme, and utilized company names that were similar or identical to the names of existing reputable companies in the construction industry.

j. Topolewski applied for and obtained loans from Financial Institutions A, B, C, D, E, and G, and Lender 1 on behalf of Topolewski America and Morrison Knudsen, purportedly to purchase large construction equipment from Finning Nevada.  In

9

support of these loan applications, Topolewski submitted and caused to be submitted to Financial Institutions A, B, C, D, E, and G and Lender 1 false and fraudulent supporting materials, such as: (a) false invoices identifying, among other things, the construction equipment to be purchased and the total cost of the equipment; (b) false income statements claiming that the applicant company had tens of millions of dollars in revenue; (c) false tax documents of the applicant company; (d) false tax documents of Topolewski in his personal capacity; (e) false bank statements from Topolewski personal bank account; (f) false reports regarding the applicant company's financial position purportedly prepared by Accounting Firm 1, which supposedly reviewed the applicant company's financial records; (g) false statements regarding the companies' operations and customers, such as a claim that its "largest clients are from our federal, state government and the mining market sector" including its "three major customers: the BLM, EPA, and DOE."

k. As a result of the materially false and fraudulent loan applications and supporting materials above, Topolewski was able to obtain numerous commercial loans; for example, as Charged in Count 6, on or around April 7, 2022, Financial Institution D sent approximately $3,511,512 in loan funds to Finning Nevada's bank account.

l. On or about April 6, 2022, in the State and Federal District of Nevada and elsewhere, Topolewski did knowingly possess and use, without lawful authority, the means of identification of another person, that is, a California driver's license bearing the name, date of birth, and address of B.W., which he sent to Financial Institution D in order to fraudulently obtain the above-described loan proceeds.

m. The next month, on or about May 6, 2022, Topolewski submitted and caused to

10

be submitted loan-application materials on behalf of Metal Jeans to Financial Institution F. Topolewski sought a revolving credit agreement in the amount of $5 million.

n. To support the loan application, Topolewski submitted and caused to be submitted materially false income statements for the years 2019, 2020, and 2021, which falsely claimed that Metal Jeans had over $32 million, $35 million, and $37 million in revenue each of those years, respectively. These income statements falsely indicated the financial records had been reviewed by Accounting Firm 1.

o. As a result of the loan application and supporting materials, Financial Institution F entered into a revolving credit agreement with Metal Jeans, which was renewed twice thereafter, on or about March 14, 2023 and on or about April 23, 2024. As a result, Topolewski was able to draw loan proceeds from Financial Institution F on approximately 12 occasions, totaling approximately $8.8 million, into a bank account of Metal Jeans held at Financial Institution F.

p. Despite his representations to the financial lenders about the nature and purpose of the loan, Topolewski did not use the majority of the loan proceeds as he had claimed. Instead, Topolewski utilized the fraudulently obtained loan proceeds and did not use the loan proceeds as he had represented to financial lenders in loan-application materials. Topolewski, among other things, diverted and misappropriated fraudulently obtained loan proceeds for other purposes.

q. In total, Topolewski fraudulently obtained approximately $39 million in commercial loan proceeds from financial lenders and financial institutions based on false information and documents, and unsuccessfully sought millions more based on false information and documents.

11

## VI. SENTENCING FACTORS

13.     Discretionary Nature of Sentencing Guidelines: Defendant understands that in determining defendant's sentence, the district court is required to calculate the applicable sentencing guidelines range and to consider that range, possible departures under the sentencing guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the sentencing guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated sentencing guidelines range, and that after considering the sentencing guidelines and the other § 3553(a) factors, the district court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

14.     Offense Level Calculations: The parties jointly agree and stipulate that, in calculating defendant's advisory guidelines sentencing range, the Court should use the following base offense level and adjustments; acknowledge that these stipulations do not bind the district court; and agree that they will not seek to apply or advocate for the use of any other base offense levels or any other specific offense characteristics, enhancements, or reductions in calculating the advisory guidelines range except as expressly noted in the following paragraphs:

| | |
|---|---|
| Base Offense Level [USSG § 2B1.1(a)]: | 7 |
| More Than $25 Million [USSG § 2B1.1(b)(1)(L)]: | +22 |
| Sophisticated Means [USSG § 2B1.1(b)(10)(C)]: | +2 |
| More Than $1 Million Gross Receipts [USSG § 2B1.1(b)(17)(A)]: | +2 |
| Adjusted Offense Level: | 33 |

The parties further agree that, if, at the time of sentencing, the district court determines that defendant has not received any criminal history points from Chapter Four, Part A, the

parties will jointly recommend that defendant receive a two-level reduction pursuant to § 4C1.1(a).

15. <u>Reduction for Acceptance of Responsibility</u>: Under USSG § 3E1.1(a), the Government will recommend that defendant receive a two-level downward adjustment for acceptance of responsibility unless defendant (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when defendant enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when defendant enters the guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when defendant enters the guilty plea; (d) provides false or misleading information to the Government, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense[s] or provides conflicting statements regarding defendant's involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw defendant's guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

Under USSG § 3E1.1(b), if the district court determines that defendant's total offense level before operation of § 3E1.1(a) is 16 or higher, and if the Government recommends a two-level downward adjustment pursuant to the preceding paragraph, the Government will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because defendant communicated defendant's decision to plead guilty in a timely manner that enabled the Government to avoid preparing for trial and to efficiently allocate its resources.

16. <u>Criminal History Category</u>: Defendant acknowledges that the district court may base defendant's sentence in part on defendant's criminal record or criminal history. The district court will determine defendant's criminal history category under the sentencing guidelines.

17. <u>Additional Sentencing Information</u>: The stipulated sentencing guidelines calculations are based on information now known to the parties. Defendant understands that

13

both defendant and the Government are free to (a) supplement the facts in this agreement by supplying relevant information to the U.S. Probation and Pretrial Services Offices and the district court regarding the nature, scope, and extent of defendant's criminal conduct and any aggravating or mitigating facts or circumstances; and (b) correct any and all factual misstatements relating to the district court's sentencing guidelines calculations and determination of sentence. While this paragraph permits both the Government and defendant to submit full and complete factual information to the U.S. Probation and Pretrial Services Offices and the district court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the Government's obligations not to contest the facts agreed to in this agreement. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for defendant to withdraw defendant's guilty plea.

Defendant acknowledges that the U.S. Probation Office may calculate the sentencing guidelines differently and may rely on additional information it obtains through its investigation. Defendant also acknowledges that the district court may rely on this and other additional information as it calculates the sentencing guidelines range and makes other sentencing determinations, and the district court's reliance on such information shall not be grounds for defendant to withdraw defendant's guilty plea.

## VII. POSITIONS REGARDING SENTENCING

18.    The Government will recommend that the district court sentence defendant at the low end of the advisory guideline range as determined by the district court. Defendant may argue for a downward variance pursuant to 18 U.S.C. § 3553.

19.    Defendant acknowledges that the district court does not have to follow the recommendation of either party.

14

20. Notwithstanding its agreement to recommend a sentence as described above, the Government reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

21. If defendant commits any act that results in the Court finding that defendant is not entitled to a downward adjustment for acceptance of responsibility, the Government is entitled to argue for any sentence it deems appropriate under 18 U.S.C. § 3553(a). In any such event, Defendant remains bound by the provisions of this agreement and shall not have the right to withdraw defendant's guilty plea.

## VIII. WAIVER OF CONSTITUTIONAL RIGHTS

22. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.    The right to persist in a plea of not guilty;

    b.    The right to a speedy and public trial by jury;

    c.    The right to be represented by counsel—and if necessary have the court appoint counsel—at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel—and if necessary have the court appoint counsel—at every other stage of the proceeding;

    d.    The right to be presumed innocent and to have the burden of proof placed on the Government to prove defendant guilty beyond a reasonable doubt;

    e.    The right to confront and cross-examine witnesses against defendant;

    f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify;

    g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant; and

15

h.    The right to pursue any affirmative defenses; Fourth Amendment or Fifth Amendment claims; any other pretrial motions that have been or could have been filed; and challenges to any adverse pre-trial rulings (unless specifically reserved in the following section).

## IX. WAIVER OF APPELLATE RIGHTS

23.    Waiver of Appellate Rights: Defendant knowingly and expressly waives the right to appeal: (a) any sentence imposed within or below the applicable Sentencing Guideline range as determined by the district court; (b) the manner in which the district court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; (c) any other aspect of the conviction, including but not limited to the constitutionality of the statutes of conviction; and (d) any other aspect of the sentence, including but not limited to the constitutionality of any mandatory or standard conditions of supervised release; the denial of any motion for early termination of supervised release; and any order of restitution or forfeiture.

24.    Defendant reserves only the right to appeal any portion of the sentence that is an upward departure or variance from the applicable Sentencing Guideline range as determined by the district court.

25.    Waiver of Post-Conviction Rights: Defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to defendant's conviction, sentence, and the procedure by which the district court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

26.    Preservation of Evidence: Defendant acknowledges that the Government and the agencies investigating this case are not obligated or required to preserve any evidence obtained in the investigation of this case.

## X. FORFEITURE

27.    Defendant knowingly and voluntarily:

16

a.   Agrees to the district court imposing the civil judicial forfeiture or the criminal forfeiture of:

1.  the amount of the illegal proceeds used to purchase real property located at 18765 Tuba Street (Northridge Area), Los Angeles, CA 91324, more particularly described as follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 19 OF TRACT NO. 17404, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 596, PAGE(S) 26 AND 27 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY.

EXCEPT THEREFROM "ANY AND ALL OILS AND MINERALS LYING 200 FEET BELOW THE SURFACE OF LOTS 1 TO 63 INCLUSIVE OF TRACT NO. 17404, AS PER MAP RECORDED IN BOOK 596 PAGES 26 AND 27 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, WITHOUT ANY RIGHT TO THE USE OF THE SURFACE OR THE SUBSURFACE TO A DEPTH OF 200 FEET BELOW THE SURFACE FOR ANY PURPOSE THAT MAY BE INCIDENTAL TO THE OWNERSHIP OF SAID SUBSTANCES." WITH ALL IMPROVEMENTS AND APPURTENANCES THEREON; APN: 2729-010-019; and

2.  real property located at W. 80th Street, Rosamond, CA 93560, more particularly described as follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF KERN, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1 OF PARCEL MAP 9627, IN THE COUNTY OF KERN, STATE OF CALIFORNIA, AS PER PARCEL MAP FILED JULY 16, 1999 IN BOOK 50, PAGES 147 THROUGH 149, INCLUSIVE, OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER SAID COUNTY.

EXCEPT UNTO THE GRANTOR HEREIN 50% OF ALL GAS, OIL, HYDROCARBON AND OTHER MINERALS IN AND UNDER SAID LAND, BUT WITHOUT ANY RIGHT OF ENTRY TO THE SURFACE THEREOF, AS RESERVED BY AMERLAND CORPORATION, A CALIFORNIA CORPORATION, AS PER DEEDS RECORDED APRIL 11, 1986 IN BOOK 5941 PAGE 579, OF OFFICIAL RECORDS; WITH ALL IMPROVEMENTS AND

APPURTENANCES THEREON; APN: 374-200-58-00-3

(all of which constitutes property);

b.    Agrees to the district court imposing an in personam criminal forfeiture money judgment of $21,858,856.34, and that the property will be applied toward the payment of the money judgment under Ninth Circuit case law, forfeiture statutes, and Fed. R. Crim. P. 32.2(b)(2)(A).

c.    Agrees the in personam criminal forfeiture money judgment amount complies with *United States v. Lo*, 839 F.3d 777 (9th Cir. 2016); *Honeycutt v. United States*, 581 U.S. 443 (2017); *United States v. Thompson*, 990 F.3d 680 (9th Cir. 2021); and *United States v. Prasad*, 18 F.4th 313 (9th Cir. 2021);

d.    Agrees to the civil judicial forfeiture and the criminal forfeiture of the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets;

e.    Forfeits the property and agrees to the substitution and forfeiture of defendant's other assets to satisfy the in personam criminal forfeiture money judgment to the United States;

f.    Relinquishes all possessory rights, ownership rights, and all rights, titles, and interests in the property and the substitution and forfeiture of defendant's other assets to satisfy the in personam criminal forfeiture money judgment;

g.    Waives defendant's right to any civil judicial forfeiture proceedings, any criminal forfeiture proceedings of the property, any criminal forfeiture proceedings of the in personam criminal forfeiture money judgment, and any substitution and forfeiture of defendant's other assets (proceedings);

h.    Waives service of process of any and all documents filed in this action and any proceedings concerning the property and the in personam criminal forfeiture money

18

judgment arising from the facts and circumstances of this case and the substitution and forfeiture of defendant's other assets;

i.      Waives any further notice to defendant, defendant's agents, and defendant's attorney regarding the forfeiture and disposition of the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets;

j.      Agrees not to file any claim, answer, petition, and other documents in any proceedings concerning the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets; agrees not to contest, and agrees not to assist any other person and entity to contest, the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets; and agrees to withdraw immediately any claim, answer, petition, and other documents in any proceedings;

k.      Waives all constitutional, statutory, legal, equitable rights, defenses, and claims including, but not limited to, the seizure of the property, the forfeited property, and the criminal forfeiture money judgment in any proceedings under the Fourth Amendment to the United States Constitution;

l.      Waives the statute of limitations, the CAFRA requirements, Fed. R. Crim. P. 7, 11, 32.2, and 43(a), including, but not limited to, the forfeiture notice in the charging document, the court advising defendant of the forfeiture at the change of plea, the court having a forfeiture hearing, the court making factual findings regarding the forfeiture, the court announcing the forfeiture at the change of plea and sentencing, the court attaching the forfeiture order to the Judgment in a Criminal Case, the substitution and forfeiture of defendant's other assets, and any and all constitutional, statutory, legal equitable rights, defenses, and claims regarding the property, the in personam criminal forfeiture money judgment, and the

substitution and forfeiture of defendant's other assets in any proceedings, including, but not limited to, double jeopardy and due process under the Fifth Amendment to the United States Constitution;

m.      Waives any and all constitutional, statutory, legal, equitable rights, defenses, and claims regarding the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets in any proceedings, including, but not limited to, a jury trial under the Sixth Amendment to the United States Constitution;

n.      Waives any and all constitutional, statutory, legal, equitable rights, defenses, and claims regarding the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets in any proceedings, including, but not limited to, excessive fines clause and cruel and unusual punishments clause under the Eighth Amendment to the United States Constitution;

o.      Waives any and all constitutional, statutory, legal, equitable rights, defenses, and claims regarding the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets in any proceedings under *Lo*, *Honeycutt*, *Thompson*, and *Prasad*;

p.      Agrees to the entry of an Order of Forfeiture of the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets to the United States;

q.      Waives the right to appeal any Order of Forfeiture;

r.      Agrees the property and the substitution and forfeiture of defendant's other assets are forfeited to the United States;

s.    Agrees the property and the substitution and forfeiture of defendant's other assets can be taken into custody immediately and the in personam criminal forfeiture money judgment is immediately due and payable and is subject to immediate collection by the USAO;

t.    Agrees and understands the civil administrative forfeiture, the civil judicial forfeiture, and the criminal forfeiture of the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets to satisfy the money judgment shall not be treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, and any other penalty the Court may impose upon defendant in addition to the forfeiture;

u.    Agrees and understands that on the Government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include subsequently located property or substitute property under Fed. R. Crim. P. 32.2(b)(2)(A) and (C) and 32.2(e);

v.    Acknowledges the amount of the forfeiture may differ from, and may be significantly greater than or less than, the amount of restitution;

w.    Agrees to take all steps as requested by the USAO to pass clear title of the property and of any forfeitable assets which may be used to satisfy the in personam criminal forfeiture money judgment to the United States and to testify truthfully in any judicial forfeiture proceedings. Defendant understands and agrees that the property and the in personam criminal forfeiture money judgment amount represent proceeds of illegal conduct and are forfeitable. Defendant shall provide the USAO to the best of the Defendant's ability a full and complete financial disclosure statement under penalty of perjury within 10 days of executing the plea agreement. The financial statement shall disclose to the USAO all assets and financial interests valued at more than $1,000. Defendant understands these assets and financial interests include

all assets and financial interests that defendant has an interest, direct or indirect, whether held in defendant's name or in the name of another, in any property, real or personal. Defendant shall also identify to the best of his ability all assets valued at more than $1,000 which Defendant has transferred to third parties or diverted from defendant, directly to third parties, since March 2014, including the location of the assets and the identity of any third party; and

x.     Admits the property and the in personam criminal forfeiture money judgment amount are (1) any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1344, or a conspiracy to commit such offense; (2) any property, real or personal, which constitutes or is derived from proceed traceable to a violation of 18 U.S.C. § 1344, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense; and (3) any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of a violation of 18 U.S.C. § 1344, affecting a financial institution, or a conspiracy to violate such offense and are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(2)(A); and 21 U.S.C. § 853(p).

## XI. RESULT OF WITHDRAWAL OF GUILTY PLEA OR VACATUR/REVERSAL/SET-ASIDE OF CONVICTION

28.    Consequence of Withdrawal of Guilty Plea: Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this agreement was involuntary, then (a) the Government will be relieved of all of its obligations under this agreement and (b) should the Government choose to pursue any charge that was either dismissed or not filed as a result of this agreement, or that the Government agreed to move to dismiss at sentencing as part of this agreement, or that the Government agreed to move to dismiss at sentencing as part of this agreement, then (i) any applicable statute of limitations will

22

be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

29.　　Consequence of Vacatur, Reversal, or Set-aside: Defendant agrees that if defendant's conviction is vacated, reversed, or set aside, both the Government and defendant will be released from all their obligations under this agreement, except that, should the Government choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## XII. BREACH OF AGREEMENT

30.　　Defendant agrees that if, at any time after this agreement becomes effective, defendant knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the Government may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the Government to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the Government in writing. If the Government declares this agreement breached, and the district court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will remain

bound by the provisions of this agreement and will not be able to withdraw the guilty plea; and (b) the Government will be relieved of all its obligations under this agreement.

31.    Following the Court's finding of a knowing breach of this agreement by defendant, should the Government choose to pursue any charge that was either dismissed or not filed as a result of this agreement, or that the Government agreed to move to dismiss at sentencing as part of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Federal Rule of Evidence 410, Federal Rule of Criminal Procedure 11(f), or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

### XIII. COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

32.    Defendant understands that the Court and the U.S. Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the Government's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24

33. Defendant understands that both defendant and the Government are free to argue on appeal and collateral review that the district court's sentencing guidelines calculations and the sentence it chooses to impose are not error.

34. Defendant understands that even if the district court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to by the parties, or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one—not the prosecutor, defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## XIV. ADDITIONAL ACKNOWLEDGMENTS

35. Defendant acknowledges that:

a. Defendant read this agreement and defendant understands its terms and conditions.

b. Defendant had adequate time to discuss this case, the evidence, and this agreement with defendant's attorney.

c. Defendant carefully and thoroughly discussed all terms of this agreement with defendant's attorney.

d. Defendant understands the terms of this agreement and voluntarily agrees to those terms.

e. Defendant has discussed with defendant's attorney the following: the evidence; defendant's rights; possible pretrial motions that might be filed; possible defenses that

might be asserted either prior to or at trial; the sentencing factors set forth in 18 U.S.C. § 3553(a); the relevant sentencing guidelines provisions; and consequences of entering into this agreement.

f.    The representations contained in this agreement are true and correct, including the factual basis for defendant's offense set forth in this agreement.

g.    Defendant was not under the influence of any alcohol, drug, or medicine that would impair defendant's ability to understand the agreement when defendant considered signing this agreement and when defendant signed it.

36.    Defendant understands that defendant alone decides whether to plead guilty or go to trial, and acknowledges that defendant has decided to enter defendant's guilty plea[s] knowing of the charges brought against defendant, defendant's possible defenses, and the benefits and possible detriments of proceeding to trial.

37.    Defendant understands that no promises, understandings, or agreements other than those set forth in this agreement have been made or implied by defendant, defendant's attorney, or the Government, and no additional promises, agreements, or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the district court.

38.    Defendant acknowledges that defendant decided to plead guilty voluntarily and that no one threatened, coerced, or forced defendant to enter into this agreement.

39.    Defendant is satisfied with the representation of defendant's attorney, and defendant is pleading guilty because defendant is guilty of the charge and chooses to take advantage of the promises set forth in this agreement and for no other reason.

//

//

//

26

## XV. PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

40.    The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION

LORINDA I. LARYEA

Acting Chief, Fraud Section

UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF NEVADA

SIGAL CHATTAH

Acting United States Attorney

_____    12/15/25
Sara Hallmark, Trial Attorney         Date
Richard Anthony Lopez, Assistant U.S. Attorney

_____    12/15/25
Gary Topolewski                      Date
Defendant

_____    12/15/25
Heidi Ojeda, Esq.                    Date
Attorney for Defendant Gary Topolewski

27